STATE, Respondent v. BONRUD, Appellant

(240 N.W.2d 77)

(File No. 11652. Opinion filed March 25, 1976)

Order denying petition for rehearing May 20, 1976

**Parnell J. Donohue,** Sioux Falls, for defendant and appellant.

**William J. Janklow,** Atty. Gen., **Earl R. Mettler,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

WINANS, Justice.

Defendant John Eldon Bonrud was charged with robbery in the first degree and with rape and tried before a jury. He was acquitted of the rape charge but found guilty on the first degree robbery charge. He has brought this appeal alleging (1) improperly admitted testimony, (2) insufficient evidence to support the charge, (3) unconstitutionality of the robbery statute and (4) failure of the trial court to give properly requested jury instructions. We have examined each assignment of error and find them to be without merit. The decision of the trial court is therefore affirmed.

On Sunday, November 24, 1974, a 19-year-old young woman was parking her car outside the place of her employment, Northwestern Bell Telephone Company in Sioux Falls, shortly before ten in the evening. As she opened her door a stranger walked up and demanded a ride. Upon her refusal the stranger forced his way into her car, sliding her over on the seat. At that point another stranger got in the car from the opposite side. The victim had been ordered by the first intruder to close her eyes and so she did not see the second individual. The victim identified the first stranger as one Ron Scirica.

The second stranger was later identified as Defendant Bonrud. The victim testified that when Bonrud got into the car he asked if she had any money and then said that he would kill her. He put something thought to be a knife to victim's neck and asked Scirica, "Ron, can I kill her?" Then he asked if he could cut her a little bit. Scirica then drove the victim's car for a short distance

through an alley, stopped the car, opened his trousers and forced the victim to have oral sex with him.

Soon a second car drove up and its driver spoke to Scirica and Bonrud. Scirica told Bonrud to get into the rear seat and then Scirica had intercourse with the victim on her car's front seat. The third man, the driver of the other car, got into the back seat and spoke to Bonrud. Together they looked through the victim's purse and they commented that there was not much money and that they should get another. They made the victim get out of the car, lie down on the ground, and they drove off.

Jake Lottman, a bank security guard, testified at the Bonrud trial that on the night of November 24th, shortly after ten in the evening he got into his car, upon leaving work, to go home. He was accosted by three men who drove up. One got out of his car and tried to enter the Lottman car from the driver's side while another ran around the Lottman car and attempted to get in from the passenger side. Lottman was able to fight them off and to prevent them from getting in. Later on he identified Ron Scirica as the intruder who tried to enter from the driver's side. The three drove off and stopped their car about half a block from Lottman's car. Lottman flagged down a Sioux Falls police officer who drove to the three men's car and parked in front of it. The three fled on foot.

Subsequently the three were apprehended and a search warrant was obtained for the car. Upon searching the vehicle the victim's purse was found inside it. Defendant gave a statement to the police concerning the events of the evening. After being found guilty on the first degree robbery charge the defendant was sentenced, February 12, 1975, to eight years in the state penitentiary, less time served awaiting trial.

■ Defendant objects to the admission of testimony concerning Scirica's sexual assaults on the victim and testimony concerning the Lottman incident which followed the robbing of the victim. Defendant John Bonrud was charged with both rape and robbery. Integral to the rape charge was the sum total of sexual activity involving the victim, Scirica, Bonrud and the third person

who is a younger brother of Bonrud. The defendant was seated next to the victim, facilitating Scirica's oral sex with her and his presence in the car, his attempt to put the victim in fear of her life by holding a knife to her throat and his failure to make any clear attempt to inhibit or thwart Scirica's rape of the victim are all proper considerations within the charge of rape. Evidence of the defendant's involvement under these circumstances was properly admitted.

The testimony concerning the attack upon the bank guard Lottman tended to place Scirica and the two Bonruds in each other's company but moments after the rape in question. It also established the method of operation of the three. In both incidents Scirica attempted to get in the car on one side, the driver's, and Bonrud attempted to get in the car from the other. Testimony concerning the Lottman incident was also necessary to show how and why the car was seized, the purse found and the three perpetrators pursued. We have previously stated that:

> "What in any case is a part of the res gestae of a crime depends upon the character and circumstances of the particular case. We believe what occurred and was said between defendant's assault upon his wife, the calling of the police, and his subsequent arrest was so intimately connected in time and place with the crime charged that it constituted a part of the res gestae and was admissible." State v. Burtts, 1964, 81 S.D. 150, 132 N.W.2d 209.

In the instant case the sex acts in the automobile, the flight by Defendant and companions in their car, the attempted robbery of Lottman immediately after (coupled with the comment that the victim's purse did not contain enough money and that they should find another) were all part of the res gestae. Although the assault on Lottman did constitute a crime in itself, the evidence was not thereby made inadmissible. As the Court also noted in Burtts, supra,

> "This evidence when a part of the res gestae was proper if it was related to and tended to prove the crime charged although it also proved or tended to prove the

defendant guilty of another crime."

Defendant-Appellant further contends that the evidence presented is insufficient to support the charge of first degree robbery. This is a clear contradiction of the record. The testimony presented showed that Defendant got into the car, held something like a knife to the victim's neck and threated to kill and/or cut her. There was further testimony that Defendant and his younger brother looked through the contents of the victim's purse while Scirica was having intercourse with her. Our statute, SDCL 22-30-1 defines robbery as:

"a wrongful taking of personal property in the possession of another from his person or immediate presence, and against his will, accomplished by means of force or fear."

SDCL 22-30-6 defines robbery in the first degree as robbery accomplished by the use of force or by putting the person robbed in fear of some immediate injury to his person. In the case before us the victim's purse was taken from her presence, against her will, by force and fear. Scirica and the defendant had trapped the victim between them and had threatened her life. While it is true that mere presence alone does not generally constitute guilt, Defendant in this case was actively participating in the crime. Defendant used force and threats against the victim and he cooperated in the taking of her purse which he immediately searched. These facts present ample evidence for the jury's finding of guilty on the robbery charge.

Defendant next contends that the state statute on degrees of robbery, SDCL 22-30-6, is unconstitutional because of ambiguity and uncertainty. This charge is made in the concluding paragraphs of his brief and is not in any significant way developed. The statute reads as follows:

"Robbery when accomplished by the use of force or by putting the person robbed in fear of some immediate injury to his person is robbery in the first degree. When

accomplished in any other manner, it is robbery in the second degree."

We fail to find in this wording any plausible degree of ambiguity or uncertainty. The challenge to the statute is without merit.

Lastly, Appellant faults the trial court for failure to give requested instructions. Our examination of the settled record discloses only two instructions which the trial court refused, and these pertained to the rape charge on which the defendant was acquitted. It would be pointless to explore the court's refusal to give these. However, Appellant also seems to indicate that he objected to the court's failure to give an instruction on larceny as a lesser included offense under a robbery charge. We do not pass on the merits of this argument because we note that Appellant did not request such an instruction at the trial level. As we noted in State v. Barr, 1975, 89 S.D. 280, 232 N.W.2d 257, "South Dakota statutory law and case law are clear in that this court cannot on appeal consider an objection to an instruction which was not made at the time the instruction was given." (citations omitted). In Barr we also noted that for these same reasons the defendant cannot be heard to object when the trial court failed to give an instruction which Defendant had not proposed. Simply stated, Appellant cannot raise on appeal the issue of an instruction on a lesser included offense under the robbery charged when he did not deal with the question according to the provisions of SDCL 23-42-6(5) and 15-6-51(b) at the trial level before the instructions were given to the jury.

The conviction of John Bonrud is therefore affirmed.

DUNN, C. J., and WOLLMAN and COLER, JJ., concur.